Good morning. May it please the court, my name is Tanya Moore and I represent plaintiff and appellant Cecil Shaw. I would like to reserve five minutes for rebuttal. There are two issues before this court. The first issue is if the district court erred when it found that my client released his claim for an excessive slope condition on the sidewalk between Radio Shack and Grocery Outlet through the settlement agreement with Grocery Outlet. That settlement released Grocery Outlet and Appellee Jar-Ramona for exterior conditions that were both appurtenant to the Grocery Outlet store and included in an access survey report which was appended to the settlement agreement. So let me just ask you this and I'm just trying to sort of get my head around this. Now obviously in Doran, if the predicate barrier that you face doesn't mean you have to face every single other barrier, but Doran doesn't involve a case where someone settled for $5,000 on a certain barrier. And my understanding is that you want to use that settlement as the predicate for all the other barriers that he didn't encounter, right? And say as a matter of law, essentially that's... And so if this court finds out that my client indeed released the condition, the excessive slope condition between Radio Shack and Grocery Outlet, then that condition became moot. But it doesn't mean that my client lost his standing because standing attaches at the filing of the complaint at the beginning of the action. But it's not... But it isn't exactly a Doran situation. It's a little bit... It's sort of... If we were to agree with your position, and I'm not saying it's wrong at this point, it has to go a little further than what Doran actually says. Am I correct? Well in... Because he could go out and confront another barrier in that area. Not the one he settled on, but he could confront another barrier and then he wouldn't have to confront all of them and that would cover Doran, right? Yes. And if my client would encounter a barrier, bring a lawsuit, and as Chapman entitled him to, seek relief for all other barriers related to his disability in this kind of situation, which is what is happening here. But is what you're trying to do, and I'm trying to see, is this... Because it isn't exactly Doran. So if you have a judgment for $5,000 against one person in this whole complex, and then you want to use that judgment as to everyone else, is then what you do is then you go to everyone else and say, see, they settled, so now you all have to settle and I don't have to do anything else and win on summary judgment? Well... I mean, is this a... That's not the position that my client takes in the settlement. I mean, it happens very often that the claims are released with tenants and as the parties become... They are willing to settle the claims, of course the settlement should proceed, so we are not... But Chapman is what makes it clear. Well, but part of it is we want things to... And I hear a lot of people that do ADA cases. You know, we want ADA people to be able to go to a particular area and, you know, something that I would encounter that wouldn't be a problem would be a problem to someone that's ADA. This $5,000 settlement, if the slope is the problem and that's what was settled, the $5,000 isn't going to fix the problem, so every other ADA person... So it's not... So you could technically go around to everyone and get $5,000, but no one fixes anything and then it doesn't fix the ADA problem. Well, the... This seems like it might be an easy way to make some money, but not solve a... But not fix the problem. I'm not sure if Your Honor is suggesting that the plaintiff is... Files a separate claims against every tenant, but Chapman is what makes it clear that once you encounter one barrier, then you have standing as to other barriers that are related to your disability. In the case that you're citing to have standing, does it also include that you continue to have standing when you settle that case? The... Well, first of all, it is our position that the excessive slope condition was never included in the release because the settlement agreement provided that only exterior conditions that were both pertinent to the grocery store outlet and included in the report, but it was never included. Before we get back to that, let me just follow up on Judge Callahan's question about the standing issue. Let's assume that we think that the excessive slope claim was released, and then let's assume that we think that your client has standing to bring claims against the unencountered barriers, but aren't... Don't there remain genuine issues of material fact? Because the district court said about the alternative proposal, well, there's a genuine issue about how much money was spent by JAR, and so it didn't seem, even if your client had standing, it didn't seem like we could affirm or we could say that the district court erred not granting summary judgment. Where would we go from there if we made that conclusion? We didn't appeal that issue, and what we're trying to do here is getting the slope fixed because if... Right, right, but you had two different points in your summary judgment motion for injunctive relief. One was JAR didn't spend enough, and the other was because of the dollar store construction, JAR has an obligation to fix everything at the shopping mall, and so we have to fix everything at the shopping center, and the district court didn't rule on that. So what are you asking us to do, even if we agreed with you on the standing point? These are two separate and distinct issues. If this court finds that the slope condition has not been released, then... Let's say that we find that it is released, and now we're at the standing question. Then in that situation, the long line of cases on standing, my client did not lose standing. Okay, so let's say we agree with you. Client has standing. Then what? What do you want us to do? Because he still has standing, then he has right to seek removal of other conditions in the shopping center that still interfere with his full and equal access. Because the this was not the only claim left. Would you have us say, well, the district court denied summary judgment on this injunctive relief claim on the ground of standing, and then on the alternative ground that there was a genuine issue of material fact regarding the amount paid. And so what would our order say? The order would be to the court, to the district court, to, if the standing still is in effect, is there, and there is undisputed conditions in the shopping center that are JAR's responsibility that still interfere with my client's full and equal access. So JAR says, but we're not responsible for fixing everything in the shopping center because we didn't, you know, it was pre-1992 construction. The dollar store's construction didn't cause it. So you don't have a legal basis for it. The JAR didn't say that. The JAR is undisputing that, is not disputing that there are barriers remaining, and that was not an issue. And that they're responsible, that JAR is responsible for fixing them? Right. JAR didn't dispute that. It did not. So there are still conditions that were not disputed. The only objection was made as to the standing. JAR's position was at the time of the motion for summary due to release through the settlement agreement. Now they don't have to address other conditions that still remain in the shopping center. That was their position. They didn't, they never disputed that it was not readily achievable or any other argument. That's why we didn't address it. But the court said that there were disputed issues about that. And that's why, and so all we have before us is whether the, whether the court was wrong, erred in denying summary judgment. That's what you appealed. And if we agree that the court, there are disputed issues there, then we would uphold the district court, right? Disputed issues about what? The district court said. What the settlement covered. And the district court said that JAR said it paid like $48,000 and that was an alternative reason for denying summary judgment. So I didn't review the whole record of summary judgment below, but apparently the district court thought there were disputes. The district court, I don't believe the district court made the findings on that. And this was an alternative which the plaintiff was proceeding on, but plaintiff has abandoned this. It says, in fact, JAR-Ramona does dispute that it failed to allocate the required 20% to retrofitting the plaza. JAR-Ramona claims to have spent more than $48,000 on ADA related work. So that was the district court's ruling on summary judgment. JAR-Ramona did not raise these issues. And if, no one disputes that there are still conditions that interfere with my client's full and equal access to the facility. And if these conditions are there, then my client still has standing and then he can still seek relief for those conditions. I guess if we didn't have this strange procedural posture, though, I guess, I'm not exactly sure how the procedural posture affects us, but I thought your client dismissed the remaining claims. And so it's just appealing the summary judgment. So it looks like to me that the only relief that we could give you would be to say that the district court erred and you should have been granted summary judgment. And if we don't agree with that, if we think that there's tribal issues, then we would affirm the district court and then you're out. And you would have to start over and confront another barrier. That if it is remanded back to the district court, so the district court can then make the decision on the remaining issues and whether or not the barriers that remain have  But you dismiss the case. You dismiss the case. And all that's in front of us is whether the district court was correct in denying summary judgment to you. I mean, it's kind of odd because usually the entity would be asking for summary judgment saying you hadn't stated a cause. But here you said, I'm entitled to summary judgment. I win. And you dismissed everything and said, I'm going, I'm putting, I'm going for the whole bowl. I'm the whole banana. And so I'm saying, I'm putting it in your court and saying, you're going to agree with me that I was entitled to summary judgment as a matter of law, right? That's the posture. No, but we believe that the ruling was incorrect, that plaintiff lost standing. All right, but what did you appeal? What did you appeal? The fact that plaintiff lost standing and could not proceed. And that the court found, the court denied you summary judgment. That's, you appealed that, right? Right. It's two minutes, Your Honor. I have, I have, my understanding is that we have not even, because we didn't lose standing and there are still claims that need to be addressed and have not been addressed. They were not addressed because the court determined that my client lost standing. So on the remand, if the standing is still there, then the court should address the remaining claims. Okay, we'll look at that. You want to save the time and then you can respond to what they have to say. But I think your procedural status may be problematic for you. Good morning, Your Honor. Richard Leonard, Leonard Dicker and Schreiber for the appellee J.A.R. Ramona Plaza, LLC. I think you've greatly shortened my argument because although I think the standing issue is a potentially interesting issue, we never have to reach that issue. We're here in a very strange procedural stance. What appellant is appealing from is the denial of a summary judgment motion, which means that everything must be looked at in the light most favorable to the appellee. If there are any material facts in dispute, then... So let's talk about the slope from Radio Shack to the grocery outlet store, which was in their first amended complaint. It was 10B3. And their argument is that, well, that wasn't listed in the report, so it wasn't released. And the district court erred in saying that it had been released. The problem with that argument is twofold. Number one, there was a settlement with grocery outlet at the time of the original complaint. Before J.A.R. ever answered, that settlement was entered and the dismissal against grocery outlet was entered. The settlement references a report. The report covered all of the claims that were made in the original complaint. So I looked at the report, and I'm not an expert on architectural elements. Nothing obviously jumped out at me as being the slope between the Radio Shack and the grocery outlet, however. That wasn't alleged... Excuse me, I mean to cut you off. That was not... See, the problem is that was not alleged in the complaint. The original complaint talked about path of travel from parking lot to grocery outlet. That was covered in the report. When they amended the complaint, they sort of changed the language and changed the claim. The problem with that is twofold. Grocery outlet was already released from that claim, and there was a covenant not to sue on any other claims that are pertinent to grocery outlet. So it might not have been... What they alleged in the amended complaint might not have been covered in the report. But everything that was alleged in the complaint was covered in the report. We read that covenant not to sue as being between Mr. Shaw and grocery outlet and not relating to JAR. So it wouldn't prevent Mr. Shaw from suing JAR. So the question would then be, well, was this claim, which is sort of a retread of the claim they had in their original complaint, this is a new... Is this a new complaint? A new issue? So just assume for the moment that the covenant not to sue in the grocery outlet release doesn't cover a suit against JAR. Well, the court dealt with that, and I think it dealt with it appropriately. It said that grocery outlet would not have entered into a settlement for a condition it would ultimately have responsibility for because of its indemnity obligation to the landlord to maintain the premises. And this was part of the grocery outlet facility. And so why would grocery outlets settle a case and then allow the plaintiff to amend to allege a new claim that would ultimately impact grocery outlet? That makes no sense. And interpreting the settlement agreement, which raises factual issues, the district court found that the intent of the settlement was to release this claim. But even if it wasn't released, it's covered by the covenant not to sue. That's what grocery outlet bargained for, not to be sued again. The fact it got a release from the plaintiff doesn't mean it got a release from JAR. And JAR could turn around and look back to the tenant and say, you're responsible for maintaining your premises. So you're saying that this claim, the route from the Radio Shack to grocery outlet store, is not expressly covered in the settlement agreement or in the report, but that we should interpret or that the district court properly interpreted the settlement agreement as covering this claim. Do I understand you correctly? Yes, that's the ultimate conclusion. To get there, though, the interpretation of the settlement agreement involves factual issues. And if it involves factual issues, summary judgment could not have been granted. Factual issues of the parole evidence rule, the intent of the parties. The intent of the parties. The settlement agreement is ambiguous and we can't the court said. The court made a finding that it was the intent of the parties to release all of these claims. And that's what I said when I started. I think the standing issue is a potentially interesting issue. I think we're right on it. But we don't get there because of the procedural status of this case. It's an appeal from a denial of a summary judgment motion. Opposing counsel says you didn't oppose the summary judgment motion. So let's put aside this Radio Shack to grocery outlet route claim and look at the claims for injunctive relief in the summary judgment motion. And opposing counsel says JAR didn't oppose or didn't make any arguments that there was a genuine issue of material fact that they were responsible for fixing all of the barriers in the shopping center as a whole. Is that correct? That is not correct. And I was curious by the fact that opposing counsel never included the summary judgment motion or the opposition in the record. They did include the separate statement. If you look at the separate statement that was filed by JAR, there's disputes as to all these material facts. And we did raise the 20% limit under the ADA claims. That's where the court got it and put it in her ruling that that was disputed. We disputed that the plaintiff encountered any violations. It's not totally pertinent to this appeal, but if you look at the other violations that were alleged, we had very strong showings that they just never existed at all and that this was all sort of made up. Even their expert said that our parking lot contained no violations. Their expert did not deal with the violation alleged in the subway store about the aisles. We felt that all of this was just false and we disputed every one of the material facts. I thought for that 11% slope, you didn't dispute that there was an 11% slope. We did not dispute the 11% slope per se for the purpose of this motion, but we said it was a released claim. And the fact that you don't dispute something in the summary judgment motion is not an admission. It just means you didn't dispute it for the purpose of the motion. But we didn't dispute that that slope existed. So with this procedural status, let me understand what you see as the path that you're asking for. You're just saying that we should affirm the district court's denial of summary judgment. Correct. And that just gets rid of the case. There's nothing left. Is that what you're saying? Well, I would appreciate a ruling on the standing issue. I think it's an important issue, but I don't think you have to get there because you have to deal with... But then you want standing, she wants standing to say that even though they dismissed and there's a settlement, that that still can act as a predicate act to all the other barriers. You want us to say that that can't be a predicate, that they have to go out and confront a new barrier and then they don't have to confront all the other ones, right? Correct. Under Duran, clearly if they prove that they encountered one barrier, but they haven't proved they encountered any barrier here. But now there's other, you know, I don't, you know, there could be, if they, let's just say if the court affirmed on the, that the district court properly denied summary judgment. Is there anything to prevent them from going out and confronting another barrier out there that doesn't involve the settlement and then filing again? I haven't thought about it, but I guess not. There was someone else who'd come out and file and claim there's another barrier. It's not part of the record, and so I'm hesitant to raise it. I don't think that can happen for a variety of reasons, but I don't think we have to get there. But from a standing standpoint. See, I think, I think counsel's use of standing is misleading. There's standing and there's mootness, and they're related. They're not exactly the same. Counsel keeps saying if you have standing, you always have standing. Well, maybe you always have standing, but a case can become moot. It's sort of a continuum of standing. When it becomes moot, there's no case or controversy. There's no subject matter jurisdiction. There's no reason that a plaintiff is going to pursue an action. So you're talking about Article III standing when you're talking about standing, and so if in fact that's what you're talking about, we can't just skip over it. I mean, we wouldn't have jurisdiction to rule, so we would have to address the standing if that's what you have in mind. If you have to get there, yes, you have to address it. Mr. Leonard, can I ask a question? Yes, Your Honor. Suppose that we disagree with you and we agree with the plaintiff that the claim for the walkway outside the grocery outlet is not covered in the release because although it's a pertinent grocery outlet, it is not mentioned in the report. I've been through the report and I don't see any mention of this walkway. If that's so, if we say we reverse the finding that the court made on the release because she misread the release, right, where does that leave us? Well, I don't think, and I'm not sure where to look. I want to look at the screen, but the camera might be coming elsewhere. You have to keep in mind the chronology here. The report came before this allegation was ever made. Don't argue the facts to me. Just tell me if we determine that, where does this leave the case? The trial court determined that the intent of the settlement was to cover all items that were directly appurtenant to grocery outlets. And mentioned in the report. No, the court did not say that. The court said... The release itself says at page one of nine on exhibit six, it says, except however that as to common areas appurtenant to the grocery outlet facility and not covered in the report. So to be released, it has to have two conditions. One, it has to be appurtenant to a grocery outlet and two, it has to be covered in the report. Now, if those two conditions don't occur, and the court misread the release, then we should reverse the denial of summary judgment, because that was the sole ground upon which he granted summary judgment, correct? No, I disagree, because what the trial court said in its ruling, and I'm looking at ER 10, the court said, the court finds the most sensible construction of the settlement agreement is that it only releases J.R. Ramona as to common area violations in the area directly appurtenant to grocery outlet. This construction of the settlement agreement accords with both the text of the settlement agreement and common sense. Grocery outlet was... Which negotiates... Suppose that we read the settlement agreements... Reading a settlement agreement, like reading an insurance policy, is a matter of law, right? No. And so we can find that the judge misinterpreted the settlement agreement by not reading it the way I just read it to you. Now, please concentrate on this question, if you would. Take a moment. Alright? Okay. Now, the question is, if we disagree with the trial judge and we find that she misread the settlement agreement and the release, then should we reverse and grant judgment to the plaintiff? Or what... What is our situation? No, because first of all, I do not accept the premise that contract interpretation is purely a legal issue. Contract interpretation involves... Accept it for this hypothet. Now, go on to... Okay. If we... It still becomes... I'm trying to get an answer from you. Where are we left if we disagree with the judge on her contract interpretation? I think procedurally, you're still left with an affirmance, because you cannot grant summary judgment. It becomes an issue, a factual issue that has to be determined and... What factual issue has to be determined? Factual issues involving the intent and purpose of the settlement agreement. Let's say, just put aside the settlement agreement and say, we agree that Mr. Shaw can proceed on its claim against JAR on this excessive slope. Is Shaw then entitled to summary judgment on that? There's no genuine issue of material fact that there's a slope that violates the ADA and that JAR is responsible for it. There's a question whether he ever encountered it. Well, he says in his complaint that he had to be pushed up the slope. What he said in his original complaint is he had to be pushed from the parking lot. Well, but I'm looking at the First Amendment complaint, which is the operative complaint, and he says he encountered it and his wife pushed him up. Was that, did JAR adduce evidence for the summary judgment motion disputing that? We did dispute that in our statement of facts, because the language in the amended complaint is essentially identical to the language in the original complaint, with one little twist. It changed the location of where this problem was. Well, his wife could have pushed him up to both ramps. Could have. But based on the fact that he was wrong about the parking spaces, he was wrong about subway, his expert acknowledged that the parking lot did not violate any rules. We believe this was all pretextual, that he made this up, and so he can't, you can't just accept it at face value. If we look in the record, will we find that JAR, in opposition to summary judgment, adduced evidence and made declarations, or whatever it is, that the factual predicate of Mr. Shaw's claims is disputed? Will we find that in the record? I'm not sure you will find in the record evidence that his claim about the alleged slope from grocery outlet to radio shack was denied. What we denied was that he encountered any of these problems, that he just changed the location. It was no longer in the report because he changed the location. The report was already a fait accompli. But we also alleged this 20% problem, which is a basis to deny summary judgment in any event. That was raised. It's in the declarations. It's in the court's finding that the court found in and of itself was a sufficient basis to deny summary judgment. And any basis is sufficient, then the court's ruling has to be affirmed. And the court specifically found that we did raise that 20% issue, and that it was a factual issue. That's why this is a strange procedural—normally, you'd be hearing an appeal from a granting of a summary judgment motion, as you did in the first case this morning. This is an appeal from a denial. And in this situation, if there's any fact in dispute, then the decision of the court was correct. This is the procedure. This is the posture we're in in this case. It's an unusual posture. But that is what we have. Mr. Leonard, could you—we're taking up past your time, but you mentioned something that interests me. You mentioned that the 20% problem was found to exist as a disputable issue of fact by the trial judge. Could you tell me just what that 20% problem is? What's the meaning of that? This is a—and I can't cite the statute, per se—but this is a pre-1992 construction. Where you have old construction, and it's very expensive to make changes, what the law says is you have to dedicate 20% of your remodeling budget, whatever you do in your work, to ADA problems. And our position was we had put in much more than 20% to ADA problems. We hadn't done— That would be a defense against the plaintiff's claim for injunctive relief. Correct. Because we— Thank you very much. Yes. And the court found that was correct and raised a tribal issue. If I just— I think we've gone way over. Oh, I'm sorry. The court doesn't have any additional questions. I'm going to call time. I appreciate it. Thank you very much, Your Honor.  Thank you. The— Ms. Moore? Yes. Could you please address the last point which Mr. Leonard made? If there was a finding of a tribal issue of fact on the 20% affirmative defense issue, why shouldn't we just affirm? It was an alternative ground for the motion for summary judgment. It was not raised as that. So in—I mean, a lot of the arguments that were made here were never argued by Jairamona. However, I would like to point out that there were no disputed issues of fact as to plaintiff standing regarding the slope, and that's on—and the fact that plaintiff has encountered the slope. It's on ER 46 and 47 where Jairamona does not dispute that Mr. Shaw encountered the slope, and then it continues on ER 51 through 54 where Jairamona does not dispute that the conditions remaining in the shopping center that still interfere with plaintiff's full and equal access remain. What we—plaintiff wants is to remand this to the district court to seek removal of the unencountered barriers based upon the encounter of the excessive slope. There's no dispute regarding Mr. Shaw's standing on the slope, and we could not have gone forward on the encounter—on the remaining barriers. We are entitled to dismiss claims that we do not want to pursue. And there were—because there were no disputed claims on the exterior conditions, if this court finds that Mr. Shaw did not release Jairamona from the excessive slope— All right, well, let me ask you that you did have a settlement, so did the settlement agreement extinguish or render moot any claim that Mr. Shaw had for encountering the slope sidewalk? Did it reduce— No, it did not. There's nowhere in that settlement agreement or the report— Then what does the settlement extinguish? The settlement extinguished all the claims—exterior claims that were both appurtenant to the grocery store outlet and listed in the report. The report that was commissioned by the grocery outlet, the report that lists conditions and none of those— Is the sidewalk appurtenant? It is appurtenant, but it is not included in the report. It was both prongs. Both factors had to be met because that was the way it was— Right, but if a claim extinguishes something that is, say, on the property owned by so-and-so or whatever, it gives that definition, but you don't mention that on the property there's a garage, then you're saying it doesn't exclude the garage, even though the garage is on the property. Right, because it's not specifically included—was not specifically included in the report— Because it extinguishes all claims on a particular piece of property. It had to be and, both appurtenant and included in the report. So it was not included in the report. The district court did not address that. They kind of implicitly made a decision that this was released when it was not, but if we're responding to a procedural issue, procedurally, the federal court demands for proper determination if the claim was released and also the standing. So— All right. Unless— I really believe—  I have a question. I think you have a colorable argument based on the non-inclusion of the ramp in the report. But how do you handle the covenant not to sue? It says that you will not file lawsuits or administrative complaints for any claims related to the grocery outlet facility. The ramp is appurtenant to the grocery outlet facility. So why doesn't that general language overrule your restrictive interpretation? Then it would be retroactive, because the complaint was filed and everything relates to when the complaint was filed. So we did not file a new complaint— Right. And it was not a new claim. It was a clarification of the already existing— It says from the parking lot to the grocery outlet, and the other one says from the radio shack to the grocery outlet. I didn't see any overlap at all. However, both of them refer to the sidewalk, and there is no sidewalk between the parking lot and the grocery outlet. It was an artfully pledged. It was a mistake, because we kind of short-circuited it, saying that it was from parking to the destination of grocery outlet, but between that, there was other— That first one, the court said it was released, and it was covered in the report. And so if the one in your first amendment complaint is the same claim, then that was also released. I mean, the district court's ruling would be binding. So I don't see how you can say it's both the same claim and a different claim. It is the very same claim, and it's the same condition that my client has encountered. It says sidewalk from parking space to entrance of grocery outlet facility, and the other one says route from the radio shack facility to the entrance of the grocery outlet store.  But if you want to look— That doesn't sound the same to me. But if you look at the diagram of the shopping center, the only sidewalk is sort of an L-shape, where it connects all the entrances of all the facilities. The parking lot is between them. So the parking lot is huge, and there is parking in front of the radio shack, there is parking in front of grocery outlet. So what was unclear in the first complaint, which was later amended, is that he didn't park in front of grocery outlet, but he parked in front of grocery—in the radio shack. And then he proceeded by using the sidewalk leading from grocery—from radio shack to the grocery outlet. Okay, so we're five and a half minutes over time. Unless either of my colleagues has additional questions, this is going to conclude argument. Thank you. All right, thank you both for your arguments. It doesn't matter what stands submitted.
judges: Callahan, Bea, Ikuta